**Michael DJORDJEVICH, Plaintiff,**

v.

**BUNDESMINISTER DER FINANZEN, FEDERAL REPUBLIC OF GERMANY, Defendant.**

Civ. A. No. 91–0521.

United States District Court, District of Columbia.

July 26, 1993.

---

Carl Layton Shipley, Washington, DC, for plaintiff.

Thomas Gardiner Corcoran, Jr., Berliner, Corcoran & Rowe, Washington, DC, Peter Heidenberger, Chevy Chase, MD, for defendant.

## MEMORANDUM

JOYCE HENS GREEN, District Judge.

Plaintiff has sued the Federal Republic of Germany for compensation for property taken in 1941 from plaintiff's uncle, who assigned his interest in the claim to plaintiff. The Court entered default judgment for plaintiff on October 1, 1992, when defendant failed to appear after proper service. Defendant subsequently moved to dismiss the complaint for want of jurisdiction and to set aside the default judgment. The motion has been fully briefed and is ready for disposition.

### I. Factual Background

The facts set forth in the Complaint, which defendant does not dispute for purposes of the initial jurisdictional question, are as follows. On May 1, 1941, plaintiff's uncle, Mihailo Stefanovitch, withdrew several thousand gold coins from a safe deposit box he held at Mesarka Banka in Belgrade. He gave the coins to Commandant Bege of the

German Garrison Command, who drew up in return a certificate documenting his receipt of 2,800 French Napolean coins; 3,200 Kaiser Franz–Josef ducats; and 540 Turkish liras. The certificate is marked No. 327–A–B, signed by Bege, dated, and stamped by the German command post in Belgrade.

In November 1971, Stefanovitch filed a claim with the Federal Republic of Germany, demanding restitution of these coins. Apparently he received no response to the demand. On June 14, 1978, Stefanovitch assigned his rights to the claim documented by the certificate to plaintiff by a written document signed in Paris. Plaintiff renewed Stefanovitch's claim in July of 1978 by writing to the German Embassy in Washington. With the aid of U.S. Representative John Burton, plaintiff finally received a response on July 7, 1980.

The response stated that the Agreement on German External Debts, signed by the Federal Republic of Germany and the United States, among other parties, postponed resolution of all such claims against the German Reich until "the definitive settlement of the reparation question." Decision of the German Bundestag, Pet. No. 600–8–680–32833, 228th Sess. (July 2, 1980) (trans. Cong. Research Serv.) (Ex. 1 to Motion for Entry of Judgment in Support of Plaintiff's Request for Relief). The treaty relied upon postponed settlement of the following group of claims, among others:

> Consideration of claims arising out of the second World War by countries which were at war with or were occupied by Germany during that war, and by nationals of such countries, against the Reich and agencies of the Reich, including costs of German occupation, credits acquired during occupation on clearing accounts and claims against the Reichskreditkassen shall be deferred until the final settlement of the problem of reparation.

Agreement on German External Debts, June 15, 1989, art. 5(2), 33 U.N.T.S. 3 (Ex. 1 to Germany's Reply to Plaintiff's Response Raising the Issue of Waiver of Sovereign Immunity).

Plaintiff now asserts that the Treaty on the Final Settlement with Respect to Germany, signed on September 12, 1990, should reopen his claim because it terminated all quadripartite agreements, including, he argues, the treaty quoted above. Treaty on the Final Settlement with Respect to Germany, art. 7(1), S. Treaty Doc. No. 101–20, 101st Cong., 2d Sess. 7 (1990) (Ex. 3 to Germany's Reply to Plaintiff's Response Raising the Issue of Waiver of Sovereign Immunity). After passage of the Final Settlement, plaintiff resubmitted his claim to the German government, which again rejected the claim on the same grounds previously stated. Plaintiff then filed the complaint in this case on March 12, 1991. He has submitted documents supporting the above facts and an appraisal estimating the present-day total value of the coins at $2,170,000, for which he seeks judgment.

## II. Jurisdiction

Plaintiff's renewed pursuit of his claim is sensible in light of German unification and its accompanying treaty developments. The newly formed German government has begun to act on previously unsuccessful claims. *See* Note, *Resolving Rival Claims on East German Property Upon German Unification,* 101 *Yale L.J.* 527, 536–37 (1991). This Court is precluded from considering the merits of plaintiff's claim, however, because plaintiff has failed to establish adequate grounds for jurisdiction over defendant.

The parties agree that jurisdiction in this case can only be asserted, if at all, under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1607 ("FSIA"). They dispute whether the FSIA should be applied retroactively to this 1941 transaction and, if the FSIA does apply, whether the transaction falls within the "commercial activity" exception to the FSIA's general provision of sovereign immunity. 28 U.S.C. § 1605(a)(2).

### A. Retroactivity

The FSIA was passed in 1976. It has been held to apply retroactively to 1952, *see Carl Marks & Co. v. Union of Soviet Socialist Republics,* 841 F.2d 26, 27 (2d Cir.1988), when the United States adopted as a matter of foreign policy the "restrictive immunity" approach to sovereign immunity. Letter from Jack B. Tate, Acting Legal Adviser,

Dep't of State, to Acting Attorney General Philip B. Perlman (May 19, 1952) (reprinted in *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (Appendix 2 to opinion of the Court)). Restrictive immunity, like the FSIA, permitted jurisdiction over foreign sovereigns in suits concerning their commercial or nongovernmental acts. Prior to 1952, the United States offered foreign sovereigns absolute immunity from suit in U.S. courts. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 486, 103 S.Ct. 1962, 1967, 76 L.Ed.2d 81 (1983).

The event in this case occurred in 1941. Although plaintiff claims that his cause of action has been tolled by the Agreement on German External Debts, any tolling of the statute of limitations does not affect the application of the FSIA. At the time of the alleged taking, absolute sovereign immunity was granted as a matter of law to foreign sovereigns. *Verlinden,* 461 U.S. at 486, 103 S.Ct. at 1967. This immunity should not be rescinded because the claim is brought in a new era. To apply the FSIA to a 1941 event would be unfair and would conflict with the settled expectation nations held at that time of immunity from suits in U.S. courts. *Carl Marks,* 841 F.2d at 27; *Jackson v. People's Republic of China,* 794 F.2d 1490, 1497–98 (11th Cir.1986); *Slade v. United States of Mexico,* 617 F.Supp. 351, 356 (D.D.C.1985), *aff'd mem.,* 790 F.2d 163 (D.C.Cir.1986). The FSIA therefore does not apply, and the German government is entitled to absolute immunity from suit in the United States over this claim.

**B. Foreign Sovereign Immunities Act**

 Even if the FSIA were to apply, it would not permit jurisdiction over the German government in this case. The FSIA provides that foreign sovereigns can be sued in U.S. courts under certain listed exceptions to the general policy of sovereign immunity. Plaintiff relies on the frequently invoked "commercial activity" exception:

(a) A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case—

(2) in which the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605. Defendant argues that the event in this case neither qualifies as a commercial activity nor had a direct effect in the United States.

It is unclear from the available facts whether the event documented by plaintiff's certificate can be considered a commercial activity. The certificate itself does not indicate the purpose for which it was executed or whether the gold coins were borrowed, exchanged, or expropriated. This issue need not be decided, however, because nothing in the facts supports a finding that the event had a direct effect in the United States.

 Case law supports jurisdiction under the commercial activity exception when the underlying transaction is payable or collectible in a U.S. bank. *Republic of Argentina v. Weltover, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992) (designation of New York as place of payment of Argentinian bonds sufficient to confer jurisdiction under FSIA). The transaction in this case had no such connection to U.S. commercial interests. The only nexus with the United States is the citizenship of the current plaintiff, who is not even the original claimant. United States citizenship of an injured party is not sufficient to warrant jurisdiction over foreign sovereigns. *Keller v. Transportes Aereos Militares Ecuadorianos,* 601 F.Supp. 787, 788–90 (D.D.C.1985) (no direct effects in U.S. where U.S. citizen killed in plane crash in Ecuador in plane owned and operated by Ecuadorian agent); *Upton v. Empire of Iran,* 459 F.Supp. 264, 266 (D.D.C. 1978), *aff'd mem.,* 607 F.2d 494 (D.C.Cir. 1979) (wrongful deaths of U.S. citizens resulting from collapse of Tehran airport roof held not to have direct effects in U.S.); *see also Saudi Arabia v. Nelson,* —— U.S. ——, ——–——, 113 S.Ct. 1471, 1478, 123 L.Ed.2d 47 (1993) (FSIA does not confer jurisdiction in suit against Saudi Arabia for torture of and torts against U.S. citizen). Because the transaction had no direct effect

in the United States, the commercial activity exception does not authorize jurisdiction.

■ Furthermore, the transaction does not even satisfy the due process standards required for personal jurisdiction over the German government. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313–14 (2d Cir.1981) (constitutional due process analysis applies to personal jurisdiction over foreign state). The transaction was between a German commander and a Yugoslavian national and took place in occupied Yugoslavia. The resulting interest, if any, was assigned in Paris, thirty-seven years later, to a U.S. citizen. These facts do not indicate even minimum contacts between defendant and the United States, as required by the Due Process Clause of the Fourteenth Amendment. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Accordingly, there is no basis for personal jurisdiction over defendant.

### III. Conclusion

Neither the FSIA nor the previously governing policy of absolute immunity permit this Court to exercise jurisdiction over defendant. Whether plaintiff has a cause of action based on the treaty developments he cites, and whether his certificate entitles him to compensation of some form, are interesting questions, but they cannot be decided by this Court. Accordingly, the default judgment against defendant should be set aside and the Complaint dismissed. An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of defendant's motion to dismiss, plaintiff's response thereto, and other supplemental filings by both parties, and for the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that the default judgment entered against defendant on October 1, 1992, is vacated; and it is further

ORDERED that the complaint is dismissed with prejudice.